# IN THE COURT OF APPEALS OF IOWA

No. 20-0829
Filed July 21, 2021

IN RE THE MARRIAGE OF ANGELA JO TOWNE
AND LARRY DEAN TOWNE

Upon the Petition of
ANGELA JO TOWNE,
    Petitioner-Appellee/Cross-Appellant,

And Concerning
LARRY DEAN TOWNE,
    Respondent-Appellant/Cross-Appellee.

_____

Appeal from the Iowa District Court for O'Brien County, Nancy L. Whittenburg, Judge.

The husband appeals and the wife cross-appeals from the economic terms of the decree dissolving their marriage. **AFFIRMED AS MODIFIED ON APPEAL AND REMANDED; AFFIRMED ON CROSS-APPEAL.**

Matthew G. Sease and Kylie E. Crawford (until withdrawal) of Sease and Wadding, Des Moines, and Randall G. Sease, Hartley, for appellant.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

Heard by Bower, C.J., Tabor, Greer and Ahlers, JJ., and Vogel, SJ.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**AHLERS, Judge.**

After entry of a decree dissolving their marriage of twenty-eight years, Larry Towne appeals and Angela Towne cross-appeals. Larry challenges the property division and spousal support provisions of the decree, as well as the district court's refusal to order Angela to pay his trial attorney fees. He also requests appellate attorney fees. On her cross-appeal, Angela also challenges the property division and spousal support provisions of the decree and requests appellate attorney fees.

## I.    Background

Larry and Angela married in 1991. They moved to Hartley soon thereafter, where they started a family. By the time of their dissolution-of-marriage trial in 2020, Larry was sixty years old, Angela was fifty-eight years old, and they had three boys who were twenty-seven, twenty-five, and twenty-two years old. The two older boys had graduated college and were self-supporting. The youngest was scheduled to graduate with an undergraduate degree a little more than one year after trial.

From nearly the beginning of the marriage through the time of trial, Larry has been self-employed in the construction field. Larry is a high school graduate. He did not pursue education after high school except for attending taxidermy school. His construction business has not grown substantially throughout the marriage, in part because of the nature of the business in a small town and in part because Larry has not shown much interest in causing it to grow.

Angela was a registered nurse at the time of the marriage. She continued her educational pursuits during the marriage after the boys were born, allowing her

to obtain a bachelor's degree in nursing in 2002 and a master's degree, making her a nurse practitioner, in 2007.

The record establishes that Angela was the primary breadwinner for the family throughout the marriage, with Larry enjoying a less hectic work schedule that allowed him time to engage in his hobbies of hunting, fishing, and golfing, in which he partook with the boys. Nine years of the parties' joint tax returns show significant disparity in the parties' incomes. Larry's income came from his business, which generated income in a range from a low of a loss of $5671.00 in 2018 to a high of $15,579.00 in 2017, with an average over eight of those years of $6818.00.[1] Angela's income, on the other hand, grew substantially commensurate with her educational achievements. During the same nine-year period, Angela's income ranged from a low of $82,331.00 in 2010 to a high of $114,321.00 in 2014, with income in excess of $100,000.00 in every year starting in 2013.

Of significance to the case, Larry was diagnosed with cancer in 2017. He had various forms of treatment, including surgery. As a result of complications with the surgery, Larry suffered nerve damage to his right hand. His medical treatment and the recovery afterward contributed to a reduction in Larry's already modest income. Although contested at trial, the record establishes Larry continues to suffer complications from the aftermath of the surgery and the nerve damage to his hand that limits his ability to do certain things. As a result, he has qualified for and is receiving Social Security disability benefits.

---

[1] The $6818.00 figure comes from an average of Larry's income taken from the 2010 to 2017 tax returns. We did not include the loss from 2018 because, as will be discussed, it was an anomalistic year due to Larry's health problems.

Other details about the parties and the case will be addressed in the following discussion of the issues raised by the parties.

## II.    Trial Outcome

The parties could not reach an agreement regarding property division or spousal support and submitted their dispute to the district court at trial.  As relevant to this appeal, the district court resolved the property dispute by valuing the parties' assets and debts and distributing them as shown by this recapitulation statement:

| Description of Asset/Debt | Angela | Larry |
| --- | --- | --- |
| House | Divided upon sale | Divided upon sale |
| 2019 Ford F-150 | $40,317.00 | |
| 2003 Ford F-150 | | $500.00 |
| IPERS | Divided by QDRO | Divided by QDRO |
| TIAA-CREF | $4,578.00 | |
| Roth IRA | $37,037.00 | |
| Rollover IRA | $34,206.00 | |
| 401(k) | $125,525.00 | |
| Boat, motor, and trailer | | $22,795.00 |
| Older boat | | $2,000.00 |
| Tools | | $3,000.00 |
| Guns and bows | | $2,000.00 |
| Mower, blower, trimmer | | $1,500.00 |
| Golf cart | | $100.00 |
| Furniture | $7,763.00 | $7,763.00 |
| Jewelry | $0.00 | $0.00 |
| House Mortgage | Divided upon sale | Divided upon sale |
| 2019 Ford F-150 loan | ($28,578.00) | |
| Wife's student loans | ($49,693.00) | |
| Youngest child student loans | ($26,107.00) | |
| Middle child student loans | ($32,843.00) | |
| Oldest child student loans | ($34,422.00) | |
| Cabela's credit card | ($8,397.00) | ($8,397.00) |
| Boat loan | | ($21,188.00) |
| Scheels credit card | | ($1,786.00) |
| Snider's Auto debt | | ($1,700.00) |

| Total Prior to Equalization | $69,386.00 | $6,587.00 |
|---|---|---|
| Equalization Payment | ($31,399.50) | $31,399.50 |
| Net Distribution | $37,986.50 | $37,986.50 |

As noted, due to the disparity of the division of assets and debts, the district court ordered Angela to pay Larry $31,400.00 to equalize their respective share of the marital net worth.[2]

As for spousal support, the district court imputed income to Larry of $45,500.00.[3]  Based on that imputed income, Angela was ordered to pay Larry traditional spousal support of $750.00 per month until Larry reached the age of sixty-seven, at which point the spousal support payment would decrease to $500.00 per month.  The spousal support was ordered to cease upon the death of either party or Larry's remarriage.

The district court made each party responsible for that party's own trial attorney fees and equally divided the court costs.  Larry appeals, and Angela cross-appeals.

## III.    Issues Presented

Larry makes five claims: (1) it was inequitable to treat the children's student loan debt as marital property that decreased Angela's comparative net worth and thus reduced the equalization payment owed to Larry; (2) the district court erred in

---

[2] Due to rounding, our recapitulation statement does not exactly mirror the district court's, but any difference is negligible.

[3] This figure was not based on any historical data, as there is no evidence in the record that Larry ever earned this much in a year.  Instead, the district court assumed Larry could generate work of forty hours per week every week of the year and multiplied those hours by Larry's hourly billing rate.  The court then reduced that gross revenue figure by an overhead percentage calculated from Larry's testimony about his expected gross revenue and net profit in 2019.

valuing the parties' jewelry at zero; (3) Larry was awarded insufficient spousal support; (4) Larry should have been awarded trial attorney fees; and (5) Larry should be awarded appellate attorney fees.

Angela makes three claims: (1) the district court neglected to include one of the children's student loans in its calculations and, when included as a debt to Angela, this additional loan should have reduced the equalization payment Angela owes to Larry; (2) the spousal support awarded to Larry is excessive and should be reduced or eliminated; and (3) Angela should be awarded appellate attorney fees.

## IV.    Discussion

We will consider each party's property division challenges all together and will do the same with their spousal support challenges.

### A.    Property Division

We begin with the standard of review.  Dissolution-of-marriage actions are reviewed de novo.  *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).  "Accordingly, we examine the entire record and adjudicate anew the issue of the property distribution."  *Id.*  While we give weight to the findings of the district court, particularly about the credibility of witnesses, we are not bound by them.  *Id.* The district court's ruling will be disturbed only when the ruling fails to do equity. *Id.*

#### 1.    Children's Student Loan Debt

To start our discussion of the student loan debt issue, we will first resolve Angela's cross-appeal issue.  Angela asserts the district court failed to consider an additional student loan debt for the youngest child in the amount of $6000.00.  She

argues that when this additional loan is accounted for, the payment she owed to equalize the parties' net worths should be reduced by $3000.00.

In support of this argument, Angela directs our attention to two exhibits. One lists the balances of four of the youngest child's student loans (exhibit 38). The other (exhibit 39) acknowledges another loan of $6000.00 not shown on exhibit 38. Angela asserts the additional loan of $6000.00 shown in exhibit 39 was not accounted for by the district court. However, our review of the exhibits shows the district court did properly account for all five notes. The four note balances listed on exhibit 38 total $20,107. When the additional $6000.00 shown in exhibit 39 is added to the total from exhibit 38, the total balance of the youngest child's student loan debt is $26,107, which is the figure used by the district court as shown in the recapitulation statement. Thus, we affirm on Angela's cross-appeal on this issue.

Having resolved the cross-appeal issue about the student loan debt, we turn to Larry's argument on appeal. As shown on the above recapitulation statement, the district court treated the children's student loan debt as a marital debt, made Angela responsible for the debt, and calculated the payment designed to equalize the respective net worths of the parties accordingly. In their briefs, the parties disagree as to whether the children's student loan debts should be treated as marital property and whether the assignment of the debts to Angela should be considered in comparing the net worths of the parties. In doing so, the parties argue about which parties co-signed the children's student loan notes.

We view the issue differently than the parties. In our view, the fighting issue is not who co-signed the notes. Instead, the fighting issue is what to do with the debts given their contingent nature.

There was evidence that both parents co-signed the children's student loan notes.[4] Whether or not one or both parents co-signed the notes, the evidence presented establishes the student loan debts were incurred during the marriage with the consent of both parties with the mutual intention to help the children of the marriage. For that reason, we conclude the debts are marital debts. *See In re Marriage of Kasik*, No. 15-1713, 2016 WL 4543981, at *3 (Iowa Ct. App. Aug. 31, 2016) (finding student loans taken out in the husband's and children's names constituted marital debt subject to division).

Concluding the student loan debts are marital property does not end the discussion, however. There remains the issue of a fair distribution of these debts, which involves considering the nature of them. The evidence establishes the student loans were taken out in the children's names, with one or both of the parents co-signing the notes evidencing the loans.[5] Larry and Angela both testified

---

[4] The district court found Larry's failure to produce documentation supporting his testimony that he co-signed the children's student loan notes as an indication that he did not do so. As a result, the district court found that Angela alone co-signed. Ironically, on appeal, the parties take the opposite positions from those taken at trial, with Angela insisting that Larry co-signed the notes and Larry not making any argument that he co-signed.

[5] This detail distinguishes this case from *Kasik*, which Angela cites. In *Kasik*, the loans were taken out in the name of both the father and the children, unlike the co-signing situation we have in this case. *See* 2016 WL 4543981, at *3. Furthermore, nothing in *Kasik* controls the outcome in this case in which we have co-signing parents with an agreed-upon plan that the children would pay their own student loans. *See McDermott*, 827 N.W.2d at 682 ("Because precedent is of little value when framing a distribution, our decision must ultimately depend on the particular facts relevant to each case.").

that their intentions, and the children's intentions, were that each child would repay that child's student loans. In fact, both of the older children who had graduated from college were making the payments on their respective student loans. Under these circumstances, any responsibility of the parents for these notes is speculative at this time, as their liability would only arise if one or more of the children unexpectedly defaulted on their loan payments and the note holders pursued any co-signing parent for payment. Given this contingent and speculative nature of the parents' liability for the student loan debts, we agree with Larry that it is inequitable to assign responsibility for the debts to Angela as if they were debts she owed. Doing so results in a fictional reduction of Angela's net worth, but a very real reduction in the equalization payment owed to Larry.

A review of the recapitulation statement used by the district court reveals the unfairness of the situation. If, as both parties and the children expect, the children repay their student loans, Angela will not be out any of the money listed as student loan debt on her side of the ledger. Once those debts totaling $93,372.00 are extinguished by the children's payments, Angela's resulting net worth rises from $37,986.50 to $131,358.50 while Larry's remains at $37,986.50. The only way the parties' respective net worths would remain equal would be if all three children defaulted on all their notes and Angela paid off the notes in their entirety. We see no equity in a division based on this unlikely worst-case scenario.

The more equitable way to deal with the parents' potential liability for the children's student loan debt is to make the parents equally responsible for any such debt if any of the children default and one or both parents become legally responsible for the debts. That way, no matter if the children pay off their loans as

expected or they unexpectedly default in whole or in part, the parties' respective net worths remain generally the same. As a result, we modify the district court's property division to provide that neither party shall be responsible for any amount of their children's student loan debts at this time. If, at any time, one or more of the children default on their student loan payments and either party becomes legally responsible for a child's student loan debts as a result, Larry and Angela shall be equally responsible for any such debt. This obligation applies only to those student loan debts in existence at the time of the district court's decree.[6] The obligation for any such debt shall be the equal responsibility of Larry and Angela no matter if Larry or Angela or both become legally responsible to a third-party for such debt.[7] Each party shall hold the other harmless for that party's respective half of any such obligation.

Due to our modification of the accounting and responsibility for the children's student loan debts, it is also necessary to recalculate the payment owed to Larry to equalize the parties' respective net worths. Rather than the equalization payment of $31,400.00 ordered by the district court, Angela shall pay an

---

[6] Any responsibility for student loan debt incurred after the dissolution decree can be determined based on the parents' respective decisions, as unmarried persons, whether to co-sign for the loans and thus expose themselves to potential liability.

[7] Of course, our ruling does not change or create rights of Larry or Angela's third-party creditors. *See* Iowa Code § 598.21(5) (2019) (allowing the court to divide the marital estate only "between the parties"); *Smela v. Smela*, 367 N.W.2d 426, 428 (Mich. Ct. App. 1985) (noting the court "has no jurisdiction in a divorce proceeding to adjudicate the rights of any party other than the husband and wife"). Those creditors shall have the same rights they had before this ruling in terms of pursuing Larry or Angela for any of the children's student loan debts. This ruling only affects Larry and Angela's responsibilities to each other if either of them becomes liable to third-party creditors for the children's student loan debt incurred before the entry of the dissolution-of-marriage decree.

equalization payment to Larry in the amount of $78,086.00.[8]  Other than the change in amount, Angela's payment obligation shall be on the same terms and conditions imposed by the district court for the equalization payment, except Angela shall have ninety days from issuance of procedendo to pay the increased amount before any interest begins to accrue on the increased amount.

### 2. Value of the Jewelry

Larry asserts the district court erred in accepting Angela's position that the parties' jewelry is valueless instead of Larry's position that it is worth $5000.00. We decline to disturb the district court's decision on this issue.  First, Larry provided no persuasive basis for his claim the jewelry is worth $5000.00 any more than Angela provided a persuasive basis for her claim the jewelry is valueless, so we cannot fault the district court for accepting a figure within the range of the evidence. *See In re Marriage of Keener*, 728 N.W.2d 188, 194 (Iowa 2007) ("A trial court's valuation will not be disturbed when it is within the range of evidence.").  Second, based on our de novo review and consideration of all the circumstances, even if we were to accept Larry's figure, it would not necessitate a change in the equalization payment.  The division of assets and debts in a marriage dissolution proceeding requires only an equitable division and, while equal division is generally considered equitable, the division need not be done with "mathematical

---

[8] By removing the children's student loan debt from Angela's side of the recapitulation statement, Angela's net worth goes up by $93,372.00, raising her total net worth before the equalization payment to $162,758.00.  To equalize the parties' net worths, the equalization payment owed by Angela goes up by half of the student loan figure (i.e., $46,686.00), raising the equalization payment from $31,400.00 to $78,086.00.  After the equalization payment, the parties' respective net worths balance at $84,673.00 each.

exactness." *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1978). Here, regardless of the value placed on the parties' jewelry, we find the property division as set by the district court and modified by this opinion to be sufficiently equitable.

### B.      Spousal Support

As with the property division issues, we will start our discussion of the spousal support issues with the standard of review. We review spousal support questions de novo, but "we accord the trial court considerable latitude." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)). As a result, we disturb the district court's order for spousal support "only when there has been a failure to do equity." *Id.*

Larry seeks an increase of the spousal support award to $2601.00 per month while Angela seeks reduction or elimination of the award. The parties seem to agree that the spousal support at issue is traditional spousal support, and we agree as well. The purpose of traditional spousal support is to "provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *See id.* at 408. In determining whether to award spousal support and the duration of any such award, courts are to consider all of the following:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and

> the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
>     f.  The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
>     g.  The tax consequences to each party.
>     h.  Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
>     i.  The provisions of an antenuptial agreement.
>     j.  Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A.

Looking at these factors, we note that the duration of the marriage is an important factor in determining whether to award traditional spousal support.  *See Gust*, 858 N.W.2d at 410.  "Traditional spousal support is often used in long-term marriages where life patterns have been largely set and 'the earning potential of both spouses can be predicted with some reliability.'"  *Id.* (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 62–63 (Iowa 1989)).  "Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support."  *Id.* at 410–11.  This twenty-eight-year marriage warrants such consideration.

Age and physical health also favor a traditional spousal support award.  The marriage covered the majority of the prime earning years of the parties, and Larry's health problems cast doubt on his ability to work on a full-time basis.  While Angela asserts, and the district court found, that Larry is capable of ongoing full-time employment, we are not as convinced.  First and foremost, the fact that Larry has qualified for Social Security disability shows that he cannot maintain full-time employment.  Second, Larry's testimony about his problems controlling his

digestive functioning and problems with his hand further support this conclusion. The fact Larry may continue to hunt, fish, and go to the bar does not negate the conclusion, as there is a considerable difference between engaging in social activities from which one can leave at any time the need arises and maintaining full-time employment where one is expected to remain throughout the day.

As to the distribution of assets, while the equalization payment evens up the parties' respective net worths, we note that Angela was awarded the lion's share of the retirement assets the parties accumulated, which we believe has a bearing on the duration of the award.

In terms of educational level, Angela has far greater education, much of which was accumulated during the marriage. As Angela acknowledged, Larry contributed to Angela's educational advancement by the child-rearing responsibilities he fulfilled during the years in which Angela pursued her college degrees. In addition, Angela's student loan debt is included as a marital debt, indirectly making Larry responsible for half of that debt.[9]

As far as earning capacity, there is no question Angela enjoys much greater earning capacity than Larry, as shown by the disparity in their respective incomes during the marriage. We note the district court imputed earning capacity to Larry that appears to greatly exceed any actual earnings history for him. While we are skeptical of this imputation of income, especially considering Larry's health issues,

---

[9] By observing Larry is indirectly responsible for half of Angela's student loan debt, we are merely noting her student loan debt is treated like any other marital debt that reduces the net value of the recipient's marital property award. We are not suggesting Larry is responsible for paying any portion of that debt. Angela remains solely responsible for her student loan debt, as reflected on the recapitulation statement.

even with the imputation of income, Angela still earns far more than Larry, further supporting an award of traditional spousal support.

As for the feasibility of Larry becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, we find little likelihood Larry could do so without an award of traditional spousal support. Although maligned for having the ability to engage in his hobbies throughout the marriage, the fact remains Larry could do so and such lifestyle should be considered. *But see In re Marriage of Mann*, 943 N.W.2d 15, 22 (Iowa 2020) (finding no spousal support to be appropriate in spite of significant earning capacity differential when the husband chose not to expand his economic prospects in favor of a less strenuous and convenient work schedule that left him ample free time).[10] His age, work history, and health issues make it unrealistic to expect that Larry could somehow manage to obtain a standard of living reasonably comparable to that enjoyed during the marriage without spousal support.

After considering the statutory factors, we find an award of traditional spousal support is appropriate. Even so, we must still determine an appropriate amount and duration.

---

[10] Angela suggests *Mann* dictates the outcome of this case and supports her claim that spousal support should be reduced or eliminated. We are mindful of the *Mann* decision, but we do not believe it packs the precedential punch suggested by Angela. Resolving spousal support disputes is a naturally fact-intensive enterprise and, as a result, precedent is of little value. *See Gust*, 858 N.W.2d at 408. Larry's health issues impair his earning capacity and contribute to his need for spousal support—important details that were lacking in *Mann*. Based on our de novo review, we find the unique circumstances of this case differ sufficiently from the unique circumstances in *Mann* to warrant the outcome we reach.

As to the amount, while the award of $750.00 per month is on the lower end of a reasonable spectrum, we are mindful of our obligation to accord the trial court considerable latitude and that we disturb the district court's order "only when there has been a failure to do equity." *See Gust*, 858 N.W.2d at 406. Applying that standard, we cannot say the district court's award of $750.00 per month failed to do equity, so we affirm the district court's spousal support award in that amount. *See Mann*, 943 N.W.2d at 22 (finding no spousal support to be appropriate where the disparity in earnings was "a product of the individual choices each spouse made rather than mutual sacrifices or contributions made to the family").

As to duration, we see no basis for reducing the spousal support when Larry reaches the age of sixty-seven. Although both parties testified about their retirement plans, which included Larry surmising that he would have to work until he no longer could, Larry's health issues cause too much uncertainty about how long he can continue to work and at what level he could do so to justify reduction of the award at an arbitrary age. Further, we reiterate Angela was awarded almost all retirement assets, which also makes a retirement-aged reduction in her spousal support obligation less justified. We find it appropriate to have the parties address potential changes in the spousal support obligation via a future modification action if either party feels circumstances have changed sufficiently to warrant it. *See Gust*, 858 N.W.2d at 418 ("The most consistent approach with the statutory scheme is that unless all of the factors in Iowa Code section 598.21C(1) can be presently assessed, future retirement is a question that can be raised only in a modification action subsequent to the initial spousal support order.").

In conclusion, we affirm the district court's award of spousal support to Larry in the amount of $750.00 per month, but we modify it to remove the reduction when Larry reaches sixty-seven years of age. Angela shall continue to pay Larry spousal support of $750.00 until the earliest to occur of the death of either party or Larry's remarriage. In affirming as modified, we also reject the cross-appeal issues raised by Angela related to spousal support.

## C.      Trial Attorney Fees

Larry seeks an award of trial attorney fees, which the district court declined to award. We review an award of trial attorney fees in a dissolution-of-marriage action for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.* (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)). Here, the district court determined that Larry was not entitled to an award of attorney fees because of the amount of the property settlement equalization payment Angela must pay. While Angela's property settlement payment obligation is sizeable, the fact remains that she has far greater income that gives her a greater ability to pay attorney fees than Larry. Nevertheless, we cannot say that the district court's refusal to award Larry trial attorney fees was an abuse of discretion, so we affirm on this issue.

## D.      Appellate Attorney Fees

Appellate attorney fees in a dissolution-of-marriage action are not awarded as a matter of right but rather rest in our discretion. *Id.* Factors to consider in determining whether to award appellate attorney fees include "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits

of the appeal." *Id.* (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). Here, Larry has the need for an award of appellate attorney fees, Angela has the ability to pay based on her income, and Larry largely succeeded on appeal. Therefore, we find an award to Larry of appellate attorney fees is appropriate. As Larry was not entirely successful on appeal, we find it appropriate to award him only sixty percent of the reasonable and necessary fees incurred on appeal. As we do not have an attorney fee affidavit filed on Larry's behalf, we cannot determine an appropriate amount of such fees and a remand is necessary. *See In re Marriage of Heiar*, 954 N.W.2d 464, 473–74 (Iowa Ct. App. 2020). We remand to the district court to determine the reasonable and necessary fees incurred by Larry. Upon determination of a total amount of reasonable and necessary fees incurred by Larry on appeal, the district court shall enter judgment in Larry's favor for sixty percent of that amount. We decline to award appellate attorney fees to Angela.

## V.     Conclusion

The district court's decree is modified to provide that the parties shall be equally responsible for any future liability on their children's student loan debt in existence at the time of the district court's decree, with the parties' respective obligations as stated in more detail in the body of this opinion.

The district court's decree is also modified to change the property settlement equalization payment owed by Angela to Larry from $31,400.00 to $78,086.00. Other than the amount being modified, all other terms and conditions of payment shall remain as set in the district court's decree, except Angela shall

have ninety days from issuance of procedendo to pay the increased amount before any interest begins to accrue on the increased amount.

The district court's decree is also modified to eliminate the reduction of Angela's spousal support obligation once Larry turns sixty-seven years of age. As a result, Angela shall pay spousal support to Larry in the amount of $750.00 per month until the earliest to occur of either party's death or Larry's remarriage.

In all other respects, the district court's decree is affirmed both on Larry's appeal and Angela's cross-appeal.

We award Larry appellate attorney fees in the amount of sixty percent of the reasonable and necessary fees incurred by Larry on appeal. The case is remanded to the district court to determine the total amount of reasonable and necessary attorney fees incurred by Larry for this appeal. Upon determination of such amount, the district court shall order Angela to pay sixty percent of the amount and enter judgment in Larry's favor accordingly.

Larry shall pay forty percent and Angela shall pay sixty percent of the court costs of this appeal.

**AFFIRMED AS MODIFIED ON APPEAL AND REMANDED; AFFIRMED ON CROSS-APPEAL.**